# NO. 25-40755

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

THE STATE OF TEXAS,

*Plaintiff-Appellant*,

v.

JOHNSON & JOHNSON; KENVUE INCORPORATED; KENVUE BRANDS L.L.C., FORMERLY KNOWN AS JOHNSON & JOHNSON CONSUMER INC.,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the Eastern District of Texas
(Case No. 6:25-cv-422) (District Judge J. Campbell Barker)

_____

### APPELLANT'S BRIEF

_____

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

Johnathan Stone
Jerry Bergman
Kelley Owens
Office of the Texas Attorney General
PO Box 12548
Austin, TX 78711

Ashley C. Keller
Lauren E. Schultz
Keller Postman LLC
2333 Ponce de Leon Blvd.
Suite R240
Coral Gables, FL 33134

John J. Snidow
John M. Masslon II
Roseann R. Romano
Keller Postman LLC
1101 Connecticut Ave. NW
Suite 1100
Washington, DC 20036
(202) 918-1123
jj.snidow@kellerpostman.com

## CERTIFICATE OF INTERESTED PERSONS

I certify that the following listed persons and entities have an interest in this case's outcome as described in the fourth sentence of Fifth Circuit Rule 28.2.1. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

| Party | Counsel |
|---|---|
| The State of Texas (Plaintiff-Appellant) | Ken Paxton<br>Brent Webster<br>Ralph Molina<br>Austin Kinghorn<br>Johnathan Stone<br>Jerry Bergman<br>Kelley Owens<br>Office of the Texas Attorney General<br>PO Box 12548<br>Austin, TX 78711<br><br>Ashley C. Keller<br>Lauren E. Schultz<br>Keller Postman LLC<br>2333 Ponce de Leon Blvd, Suite R240<br>Coral Gables, FL 33134<br><br>John J. Snidow<br>John M. Masslon II<br>Roseann R. Romano<br>Keller Postman LLC<br>1101 Connecticut Ave. NW Suite 1100<br>Washington, DC 20036 |
| Johnson & Johnson (Defendant-Appellee) | Geoffrey M. Wyatt<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Ave. NW<br>Washington, DC 20004 |

| | Aaron L. Nielson<br>Kim Bueno<br>Austin J. Lesch<br>Kirkland & Ellis LLP<br>401 W. 4th Street<br>Austin, TX 78701<br><br>Eugene Temchenko<br>Taylin Antonick<br>Kirkland & Ellis LLP<br>4550 Travis Street<br>Dallas, Texas 75205<br><br>D. Bryan Hughes<br>Law Office of D. Bryan Hughes<br>110 North College Ave, Suite 207<br>Tyler, Texas 75702<br><br>Scott Keller<br>Lehotsky Keller Cohn LLP<br>200 Massachusetts Ave NW, Ste 700<br>Washington, DC 20001 |
|---|---|
| Kenvue Inc. (Defendant-Appellee) | same as for Johnson & Johnson |
| Kenvue Brands LLC (f/k/a Johnson & Johnson Consumer Inc.) (Defendant-Appellee) | same as for Johnson & Johnson |
| Kimberly-Clark Corporation (non-party) | n/a |

/s/ John J. Snidow
JOHN J. SNIDOW
*Counsel for The State of Texas*

February 24, 2026

ii

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is warranted here. This case presents an important opportunity for this Court to (further) clarify the narrow scope of so-called *Grable* jurisdiction, where pure state claims "arise under" federal law because they contain embedded federal issues. This appeal also allows the Court to reiterate that the propriety of an attempted removal turns on an objective standard, not a district court's charitable finding of zealous advocacy. *Grable* sets fourth four *independently necessary* criteria to establish arising under jurisdiction over state-law claims. It reiterated the Supreme Court's prior decision in *Merrell Dow,* which is on all fours with this case. Defendants did not even cite, let alone distinguish, *Merrell Dow.* Whatever Defendants' "subjective" intent, the removal was objectively contumacious. This Court should say so.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF AUTHORITIES ...........................................................................vi

JURISDICTIONAL STATEMENT ....................................................................1

I.   THE DISTRICT COURT LACKED JURISDICTION OVER THE MERITS OF THE CASE ...........................................................................................1

II.  THIS COURT HAS JURISDICTION OVER THE ORDER DENYING COSTS AND FEES ...........................................................................................1

III. THIS APPEAL IS TIMELY ....................................................................1

INTRODUCTION .........................................................................................2

STATEMENT OF CASE .................................................................................5

SUMMARY OF ARGUMENT ..........................................................................9

STANDARD OF REVIEW ............................................................................11

ARGUMENT .............................................................................................12

I.   DEFENDANTS HAD NO OBJECTIVELY REASONABLE BASIS ON WHICH TO REMOVE THIS CASE .......................................................................12

   A.   There Was No Objectively Reasonable Basis For Diversity Jurisdiction .................................................................................12

   B.   There Was No Objectively Reasonable Basis For Federal-Question Jurisdiction Based On A Federally Created Claim..............12

**TABLE OF CONTENTS**
(*continued*)

**Page**

C.     There Was No Objectively Reasonable Basis For *Grable* Jurisdiction .................................................................13

      1.     The Petition did not necessarily raise a stated federal issue.....14

      2.     The Petition did not state a federal issue that was actually in dispute.................................................................15

      3.     No substantial federal issue was present..................................16

      4.     Allowing federal jurisdiction would raise serious federalism concerns ...............................................................19

D.     There Is No Objectively Reasonable Basis To Believe That A Preemption Defense Is A Valid Basis For Removal...........................20

II.     THE DISTRICT COURT ERRED IN NOT AWARDING FEES AND COSTS ..............23

A.     Costs And Fees Were Warranted Under § 1447(c)............................23

B.     An Award Of Costs And Fees Is Necessary For Deterrence ..............25

CONCLUSION ........................................................................................26

CERTIFICATE OF SERVICE .......................................................................28

CERTIFICATE OF COMPLIANCE .................................................................28

v

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*,
No. 22CV8830 (DLC), 2023 WL 3026412
(S.D.N.Y. Apr. 20, 2023)................................................................................20

*Admiral Ins. v. Abshire*,
574 F.3d 267 (5th Cir. 2009) .........................................................................11

*Am. Well Works Co. v. Layne & Bowler Co.*,
241 U.S. 257 (1916)....................................................................................3, 13

*Atl. Richfield Co. v. Christian*,
590 U.S. 1 (2020)............................................................................................12

*Bd. of Comm'rs of Se. La. Flood Prot.*
*Auth.-E. v. Tenn. Gas Pipeline Co.*,
850 F.3d 714 (5th Cir. 2017) .........................................................................13

*Beneficial Nat'l Bank v. Anderson*,
539 U.S. 1 (2003)............................................................................................22

*Centro Cristiano Cosecha Final, Inc. v. Ohio Cas. Ins.*,
No. H-10-1846, 2011 WL 240335 (S.D. Tex. Jan. 20, 2011) ..........................23

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)........................................................................................14

*City of Roanoke v. Purdue Pharma L.P.*,
No. 1:19-op-45696-DAP (N.D. Ohio Jan 12, 2023), Dkt. No. 65 .......................2

*Davey v. Safeway Inc.*,
No. 24CV064095, 2025 WL 1331951 (Cal. Super. May 5, 2025) ...................21

*De Aguilar v. Boeing Co.*,
11 F.3d 55 (5th Cir. 1993) ...............................................................................3

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ..........................................................................11

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Garbie v. DaimlerChrysler Corp.*,
211 F.3d 407 (7th Cir. 2000) ........................................................................22

*Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)........................................... 3, 9, 13, 14, 15, 16, 19

*Gunn v. Minton*,
568 U.S. 251 (2013)..........................................................................13, 14

*Healy v. Ratta*,
292 U.S. 263 (1934)................................................................................19

*Hornbuckle v. State Farm Lloyds*,
385 F.3d 538 (5th Cir. 2004) ...................................................................1

*Hussain v. Bos. Old Colony Ins.*,
311 F.3d 623 (5th Cir. 2002) .................................................................12

*Louisville & Nashville Railroad Co. v. Mottley*,
211 U.S. 149 (1908)..................................................................................4

*Martin v. Franklin Cap. Corp.*,
546 U.S. 132 (2005).................................................................................11

*Merrell Dow Pharms. Inc. v. Thompson*,
478 U.S. 804 (1986)................................................................3, 13, 17, 18, 21

*New Orleans & Gulf Coast Ry. Co. v. Barrois*,
533 F.3d 321 (5th Cir. 2008) .............................................................21, 22

*Osborn v. Bank of the United States*,
22 U.S. 738 (1824)....................................................................................4

*Renegade Swish, L.L.C. v. Wright*,
857 F.3d 692 (5th Cir. 2017) .........................................................1, 11, 23, 24

*Smith v. Kansas City Title*,
255 U.S. 180 (1921)................................................................................16

# TABLE OF AUTHORITIES
## (*continued*)

**Page(s)**

*Spear Mktg. Inc. v. BancorpSouth Bank*,
  844 F.3d 464 (5th Cir. 2016) ...............................................................................21

*Wyeth v. Levine*,
  555 U.S. 555 (2009).............................................................................................20

**Statutes**

28 U.S.C.
  § 1291.......................................................................................................................1
  § 1331........................................................................................................1, 4, 12
  § 1441............................................................................................................1, 12
  § 1446(d) ...........................................................................................................2, 7
  § 1447(c) ........................................................ 3, 4, 8, 11, 22, 23, 25
  § 1447(d) ................................................................................................................1

Tex. Bus. & Com. Code
  § 17.47....................................................................................................................5
  § 24.005..................................................................................................................6

**Rules**

Fed. R. App. P. 4 ........................................................................................................1

Fed. R. Civ. P. 11 ..................................................................................................8, 25

# JURISDICTIONAL STATEMENT

## I. THE DISTRICT COURT LACKED JURISDICTION OVER THE MERITS OF THE CASE.

This case was originally filed in the 123rd District Court in Panola County, Texas. Defendants removed, resting jurisdiction on 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." *Id.*; *see also* 28 U.S.C. § 1441 (defining when a case may be removed). The District Court correctly "grant[ed] plaintiff's motion to remand this case to state court." ROA.439. But the District Court improperly held that "[n]o costs or fees" were warranted. ROA.439.

## II. THIS COURT HAS JURISDICTION OVER THE ORDER DENYING COSTS AND FEES.

This Court has jurisdiction under 28 U.S.C. § 1291. "Although this Court may not review a district court's remand for lack of subject matter jurisdiction," *Renegade Swish, L.L.C. v. Wright*, 857 F.3d 692, 694 (5th Cir. 2017), "§ 1447(d) does not prohibit review by this court of the order of costs and fees." *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004).

## III. THIS APPEAL IS TIMELY.

The District Court denied fees and costs on November 8, 2025. The State filed the Notice of Appeal on November 17, 2025. The appeal is therefore timely. *See* Fed. R. App. P. 4.

## INTRODUCTION

Removal is not a game. But defendants all too often treat it as one. When a defendant removes a case to federal court—something it can do unilaterally without permission from any jurist—the immediate consequence is a stay of all proceedings in state court. 28 U.S.C. § 1446(d). For defendants faced with state-court proceedings they wish to delay, the statutory command that the state court "proceed no further unless and until the case is remanded," *id.,* creates a very real temptation to remove cases that federal courts cannot possibly adjudicate on the merits. But the defendants running this playbook hardly care that the district court will eventually remand the case back to state court, where it always belonged. When the goal is to jam the gears of justice, the weeks, months, or *even years* that lapse while a motion to remand is pending accomplishes the defendants' tactical objective. *See, e.g.*, *City of Roanoke v. Purdue Pharma L.P.*, No. 1:19-op-45696-DAP (N.D. Ohio Jan 12, 2023), Dkt. No. 65 (remand motion pending for 33 months and decided only after writ of mandamus issued).

Defendants here decided to run this all-too-familiar play call. The State of Texas sued in Texas state court with claims that indisputably were created by the Texas legislature. Faced with an emergency temporary restraining order hearing that they wished to put on hold, Defendants removed this case to federal court mere hours

2

before the hearing was scheduled to begin. The putative basis for removal was that the case arose under federal law.

No objective lawyer could agree. The ordinary rule—which is a century old—is that a suit arises under the law that creates the cause of action. *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). Not even Defendants had the temerity to claim they met that standard. Instead, they invoked the embedded-federal-issue-within-a-state-claim exception, which the Supreme Court has invoked a mere four times in American history to find arising-under jurisdiction over pure state causes of action. *Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Defendants fell woefully short of satisfying their burden of establishing the jurisdiction they contumaciously invoked. *See De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). And as the District Court remarked from the bench, Defendants *did not bother to cite*, let alone distinguish, binding Supreme Court precedent that rejected arising-under jurisdiction in almost exactly the same context. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986); ROA.477-478.

The *only* way to deter defendants from treating removal like a game is to ensure that they do not achieve an unalloyed victory simply by playing. That, in turn, requires district courts to award the "just costs and any actual expenses" that Congress authorized in appropriate circumstances. 28 U.S.C. § 1447(c). This is

unquestionably such a case. But the District Court's approach to Defendants' laughably unwarranted removal effort exemplifies why the gamesmanship continues unabated. The District Court found that Defendants' counsel acted within the bounds of zealous advocacy. ROA.503-504. The District Court noted its own view that the well-pleaded complaint rule embodied in *Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149 (1908) is debatable, and that constitutional arising-under jurisdiction should arguably be interpreted the same way as § 1331. ROA.504. What does that have to do with the price of tea in China? An *objective*, reasonable removal effort must grapple with *binding* Supreme Court precedent, regardless of whether law reviews and federal courts law students might debate the propriety of those century-old opinions. Suffice it to say, Defendants did not rest their doomed removal effort on an argument to overturn *Mottley* or by inviting the Supreme Court, for the first time in history, to read § 1331 *in pari materia* with Article III and *Osborn v. Bank of the United States*, 22 U.S. 738 (1824).

If *this* removal was not objectively unreasonable, the message defendants will hear loudly and clearly throughout this Circuit is: game on. There is no price to be paid for delaying access to state-court justice, to say nothing of the waste imposed on opposing counsel and federal judges, who must brief and decide all-but-certain remand motions. Even the modest deterrent imposed by § 1447(c) may be insufficient to prevent many contumacious removals, as a fair number of large and

4

well-capitalized defendants will surely treat those awards as a price worth bearing to purchase inordinate delay. But some modest cost for manipulative stall tactics is better than none at all, and district courts must not shirk their responsibility to impose "actual expenses" when no objective attorney could invoke the jurisdiction of the federal courts. The decision to let Defendants game the system must be reversed.

## STATEMENT OF ISSUES

1. Whether costs and fees should be awarded when there was no "objectively reasonable basis" for seeking removal under clear precedent from the Supreme Court of the United States.

2. Whether costs and fees are warranted when removal is self-evidently designed to "cause unnecessary delay."

## STATEMENT OF CASE

The State instituted this case by filing an Original Petition in the 123rd District Court of Panola County, Texas on October 27, 2025. ROA.54-101. The Petition included two claims. First, the Petition alleged that Defendants violated Texas's Deceptive Trade Practices Act (DTPA). ROA.96-97. (Petition alleging DTPA violations); *see* Tex. Bus. & Com. Code § 17.47 (Texas DTPA). Specifically, the Petition alleged that Defendants knew Tylenol causes Autism Spectrum Disorder (ASD) and Attention Deficit Hyperactivity Disorder (ADHD), but nevertheless failed to warn Texans about that risk. Second, the Petition alleged that Defendants

5

violated Texas's version of the Uniform Fraudulent Transfer Act. ROA.98-100. (Petition alleging Texas UFTA violations); *see* Tex. Bus. & Com. Code § 24.005 (Texas UFTA). Specifically, the Petition alleged that, by spinning off Kenvue Inc. and saddling it with Johnson & Johnson's liabilities, Defendants had engaged in actual and constructive fraud as defined by Texas law.

Although the Petition included allegations about what certain federal officials said about the scientific evidence, none of those brute facts were necessary to either state-law claim or inserted any question of federal law. For example, the Petition noted that "the federal government confirmed . . . acetaminophen use during pregnancy likely causes conditions like ASD and ADHD." ROA.55. That is nothing more than a (true) historical fact that happened in the real world. Agents of the federal government, including the President of the United States, did in fact make these statements. Nothing in the Petition suggested that there was any part of the lawsuit predicated in any way on federal law. To put it bluntly, there was nothing "federal" on the face of this complaint.

A week then passed. Defendants were well aware of the Petition, and made numerous statements to the press disputing what it alleged. But none of those criticisms ever said or even intimated that Texas's claims were somehow based on federal law. *See* ROA.252-253. (Kenvue press release disparaging the merits of the claim, but never suggesting a jurisdictional issue). On November 5, 2025, the State

6

moved for a TRO. *See* ROA.141-164. That motion sought to prevent Defendants from continuing to violate the DTPA via a new false and misleading PR campaign. The motion also sought to enjoin Kenvue Inc. from giving away, for no consideration, $400 million to shareholders.

The Texas court almost immediately scheduled an emergency hearing to decide the motion for a TRO. The order setting the hearing was signed on November 6, 2025. The Texas court ordered the parties to appear at 9 a.m. on November 7. Rather than contest the claims on the merits—as they had in their press release and other statements for the entirety of the previous week—Defendants instead decided to remove to federal court. This occurred at 8 p.m. on November 6—more than ten days after the Petition was filed, but a mere 13 hours before the TRO hearing was scheduled to occur. The removal had its intended effect: an automatic stay of proceedings in the state court pursuant to 28 U.S.C. § 1446(d).

In their notice of removal, Defendants laid out one of the most strained bases for federal jurisdiction imaginable. *See* ROA.7. They did not argue that there was diversity jurisdiction. Nor did they argue that the Petition included any claims that were created by federal law. Rather, they argued that the case "implicate[d]" "a statement by a federal public figure challenging the safety of a drug," by which they meant only that the Petition noted the (true) fact that the President of the United States and other senior executive-branch officials had questioned the safety of

Tylenol. ROA.7. They also argued that the suit "implicated "a state's authority to prohibit the sale and marketing of an FDA-approved medication," which is not what the Petition sought to do, and in any event is a question about preemption, an affirmative defense. ROA.7. And they argued that the suit "implicated" "a state's authority to impose liability on a manufacturer for marketing a product bearing a warning that satisfies all requirements mandated by the FDA," which again is (at most) a preemption question. ROA.7. This was the sum total of bases Defendants provided for removing the case.

Defendants, however, were not content with just delaying this case for weeks by improperly removing it to federal court. Contemporaneously with filing their notice of removal, they also asked the Judicial Panel on Multidistrict Litigation to transfer the case to the personal-injury MDL pending in the Southern District of New York. *See* ROA.17; ROA.423-424. If successful, this would have delayed the State's case for months, as the MDL is currently stayed pending an appeal in the Second Circuit.

The State moved for an emergency remand the next morning, including a request for costs and fees under 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). The State also noted (at ROA.247.) that the Court could award costs and fees *sua sponte* under Federal Rule of Civil Procedure

8

11, which provides for sanctions if a party makes a filing for the "purpose" of "caus[ing] unnecessary delay." The District Court took the extraordinary step of scheduling a hearing for the very next day, November 8, a Saturday. Defendants' opposition brief was as pathetic as their notice of removal. So-called *Grable* federal-question jurisdiction requires a removing defendant to show four independently required factors. *Grable*, 545 U.S. at 312. Defendants *did not cite* the Supreme Court's controlling decision in *Merrell Dow*, which squarely addressed a State's authority to impose liability for conduct involving an FDA-approved drug, the *exact* ground Defendants invoked to make the complaint seem more federal in nature.

The District Court had no difficulty disposing of Defendants' arguments. It "grant[ed] plaintiff's motion to remand this case to state court" from the bench during the telephonic hearing. ROA.439. But it ultimately held that "[n]o costs or fees are awarded." ROA.439. In doing so, the District Court did not formally analyze whether there was an objective basis for removal. ROA.503-504. The case was transmitted back to the 123rd District Court in Panola County, Texas. The State timely filed this appeal.

## SUMMARY OF ARGUMENT

**I.** Defendants lacked any objectively reasonable basis to remove this case to federal court. Three possible grounds for removal are undisputed. First, there is no objectively reasonable basis to assert diversity jurisdiction because the State of Texas

9

is not a citizen of any State. Second, there is no objectively reasonable basis to assert federal-question jurisdiction based on a federally created claim because the State only brought claims created by the Texas Legislature. Third, there is no objectively reasonable basis to assert federal-question jurisdiction based on the affirmative defense of ordinary preemption.

That leaves one possible basis for federal jurisdiction—the rarely invoked *Grable* doctrine. To remove a case based on *Grable*, four independent elements must be satisfied. Here, there was no objectively reasonable basis to believe that Defendants could satisfy one of those elements, much less all four. First, the Petition did not *necessarily* raise a federal issue. Rather, it stated two state-law claims that did not involve *any* federal issues. Second, the Petition did not state that any (nonexistent) federal issue was actually disputed. Whether Defendants breached a federal duty has no effect on whether the State's claims will succeed. Third, even if a federal issue were present, it was not substantial. The cases that have recognized a substantial federal issue addressed issues of national importance. Finally, allowing federal jurisdiction here would upend the balance of power between the States and the Federal Government. In America, States generally have the responsibility to protect their citizens' health.

**II.** The District Court erred in not awarding fees and costs under the removal statute. This Court's precedent is clear: Fees and costs must be awarded to a plaintiff

10

when a defendant lacks an objectively reasonable basis for removing a case to federal court. The defendant's subjective beliefs play no role in the inquiry. Here, there is no split of authority or unsettled law because the Supreme Court spoke definitively on the removal question in *Merrell Dow*. If this Court does not reverse, it will give defendants the greenlight to frivolously remove cases to federal court when they don't like the state court playing field. This Court must throw the flag and penalize Defendants for their removal here because there was no objectively reasonable basis for federal jurisdiction.

## STANDARD OF REVIEW

This Court reviews for an abuse of discretion a "decision not to award costs and attorney's fees under § 1447(c)." *Renegade Swish*, 857 F.3d at 694; *Admiral Ins. v. Abshire*, 574 F.3d 267, 280 (5th Cir. 2009). It is typically an abuse of discretion to apply the wrong legal standard. *See Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022). To determine whether to award fees and costs under § 1447(c), the district court must not assess the subjective reasonableness of the removing party's decision. Rather, the question is purely objective. Under prevailing law, was there an "objectively reasonable basis for removal?" *Renegade Swish*, 857 F.3d at 694; *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). If the answer is "no," as it was here, then fees and costs must be awarded.

11

## ARGUMENT

**I. DEFENDANTS HAD NO OBJECTIVELY REASONABLE BASIS ON WHICH TO REMOVE THIS CASE.**

### A. There Was No Objectively Reasonable Basis For Diversity Jurisdiction.

When a complaint brings solely state-law claims—as this one here did—federal courts typically hear the case only when it involves diversity of citizenship. But that source of federal-question jurisdiction was unavailable to Defendants here, given that the State of Texas is a co-equal sovereign in our federal system, not a "citizen" of any State. *See* 28 U.S.C. § 1441; *Hussain v. Bos. Old Colony Ins.*, 311 F.3d 623, 635 n.46 (5th Cir. 2002) (holding that the presence of a State in a lawsuit does not create diversity citizenship even when the other parties are citizens of a different State).[1] Given this clear law, it quite obviously would have been "objectively unreasonable" to remove the case on the basis of diversity jurisdiction.

### B. There Was No Objectively Reasonable Basis For Federal-Question Jurisdiction Based On A Federally Created Claim.

As a result, Defendants were forced to try to manufacture federal-question jurisdiction under 28 U.S.C. § 1331. For this gambit to have been proper, the claims in the complaint needed to have "aris[en] under" federal law. *Id.* Normally "a suit

---

[1] Defendants conceded this issue below. *See* ROA.471-472. ("The Court: I'm not seeing any argument about diversity jurisdiction, correct?  Mr. Wyatt: That's also true.").

12

arises under the law that creates the cause of action." *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 13 (2020) (quoting *Am. Well Works*, 241 U.S. at 260); *see also Gunn v. Minton*, 568 U.S. 251, 257 (2013) ("Most directly, a case arises under federal law when federal law creates the cause of action asserted."). This is because "the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow*, 478 U.S. at 808. But the two claims in the Petition are *state law claims*. They were "create[d]" by the Texas Legislature, not any federal entity. *Id.* Given that there were *zero* federal-law claims at issue, it would thus also have been "objectively unreasonable" for Defendants to have tried to remove on the basis of traditional federal-question jurisdiction.

## C. There Was No Objectively Reasonable Basis For *Grable* Jurisdiction.

This traditional test for federal-question jurisdiction—does the complaint plead a claim created by federal law—is applied in "the vast bulk of suits" and indeed "admits of only extremely rare exceptions." *Gunn*, 568 U.S. at 257. Although there is a "special and small category of cases" that may be heard under federal-question jurisdiction even though they *do not* bring claims created by federal law, *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 2017), it was not objectively reasonable for Defendants to argue that this case fell into that special and small category, often called *Grable* jurisdiction.

13

*See generally* 545 U.S. at 314. Even Defendants had to concede below that this is not "the typical basis of jurisdiction"–and that this is true "even of federal question jurisdiction." ROA.486. On that point—the exotic nature of the *Grable* jurisdiction on which they relied—Defendants were absolutely correct.

In order to show that a case falls into this "less frequently encountered variety" of federal-question jurisdiction, the removing party must show that four, independently necessary factors are met. *Grable*, 545 U.S. at 312. "[F]ederal jurisdiction over a state law claim will lie" *only if* "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Precisely zero of these requirements were actually satisfied here—much less *all four of them*—and it beggars belief to suggest that Defendants had an objectively reasonable basis to believe they somehow could have *run the table* on this test given the allegations in the State's Petition.

### 1.    The Petition did not necessarily raise a stated federal issue.

To begin with, the *complaint* on its face (not through any affirmative defenses) must "necessarily raise[] a stated federal issue." *Grable*, 545 U.S. at 314. It is not enough that *one path* to recovery *could* involve deciding a federal issue. Only when *all paths* require disposing of a federal question is this factor met. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 811–12 (1988). The Petition comes

nowhere close to meeting this factor. Both state-law claims turn on Texas law and basic facts in the real world (i.e. is Kenvue insolvent and does Tylenol cause neurodevelopmental harm). What federal officials have said about these factual questions is useful context and nothing more. And as should hardly bear mentioning, when executive branch officials speak, their words do not become "laws" under which any cause of action can "arise."

Defendants' briefing below argued that "[t]he State's allegations are premised on alleged violations of federal duties." ROA.425. But Defendants did not point to which federal duties the State must show they violated to succeed on its claims. The reason is simple—there are no federal duties at issue. The State could present and win its entire case-in-chief without ever once mentioning a provision of the U.S. Code, Federal Register, or federal case books. It is obvious that the lawsuit cannot "necessarily" raise a federal issue.

### 2.    The Petition did not state a federal issue that was actually in dispute.

Next, the removing party must show that there was a federal issue that was "actually disputed." *Grable*, 545 U.S. 314. But again, Defendants' briefing below does not point to any actual dispute regarding a federal issue. They just repeat their frivolous argument that "the elements of [the State's] DTPA claims are expressly predicated on supposed violations of federal law." ROA.429. Nothing could be

further from the truth, and Defendants' argument was far outside the bounds of zealous advocacy.

When a party can satisfy its burden of proof without ever once mentioning federal law—as the State could here—it is self-evident that no federal issue is actually in "dispute[]." *Grable*, 545 U.S. 314. And even pretending that when executive branch actors utter words, that somehow implicates a "law of the United States," the words they uttered are *not actually disputed* because they are matters of undeniable record. To be sure, Defendants actually dispute that their product is dangerous or that Kenvue is insolvent, but that is not a dispute over the supposedly "federal" gloss in the complaint as opposed to facts in the real world.

### 3.     No substantial federal issue was present.

Third, the removing party must show that the federal issue—i.e., the one putatively raised in the complaint—is "a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable* 545 U.S. at 313. A "constitutional question[]" arguably qualifies. *Id.* at 320 n.7. But there are no intriguing questions of federal constitutional law to be found in the Petition here. Nor are there any other similarly weighty questions of federal law such as the legitimacy of federal property sales at issue in *Grable* or the legitimacy of federal bonds at issue in *Smith v. Kansas City Title*, 255 U.S. 180 (1921). As detailed above, the Petition requires no federal law to be considered at all. But in any event,

16

there is simply no straight-faced argument that this suit raises systemic and weighty issues that matter for the national government. That the dispute is important *to the actual parties* is a given in any high-stakes case.

If there were any doubt on this score, binding Supreme Court precedent resolves it. In *Merrell Dow*, the plaintiff brough a standalone *claim*—"Count IV" in the complaint—alleging that the relevant drug "was 'misbranded' in violation of [federal law]." 478 U.S. at 805. Indeed, plaintiff's theory of negligence relied on "the violation of [federal law]." *Id.* at 806. In other words, the complaint alleged that the defendant had been *per se* negligent (under state law) because it was violating a legal rule created by federal law. *See id.* at 813 (describing the claim as one where "violation of the federal statute [w]as an element of a state cause of action"). Sensing a possible run at a federal question, the defendant removed the case.

The Sixth Circuit—and later the Supreme Court—had little trouble deciding that the case simply did not raise a federal question warranting the original jurisdiction of the federal district courts. As the Court noted, the "federal law" did not "create[] any of the causes of action" asserted in the complaint. *Merrell Dow*, 478 U.S. at 809. That is obviously true here as well, as *the same federal law*, the Food, Drug and Cosmetic Act, is the one Defendants invoke. *See id*. As the Court noted, based on "long-settled understanding," "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question

17

jurisdiction." *Id.* at 813. "[T]he presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Id.* at 814. The Court made clear "the question whether a particular claim arises under federal law" does not "depend[] on the novelty of the federal issue." *Id.* at 817; *id.* ("The novelty of an FDCA issue is not sufficient to give it status as a federal cause of action."). And the Court rejected the defendant's attempt to use a preemption defense as a hook for federal question jurisdiction. Although the defendant pointed out—as Defendants did here—that state tort litigation might interact in complicated ways with "the [federal drug law] regime," the Supreme Court properly characterized that as an argument that "the FDCA pre-empts state-court jurisdiction," *not* that federal-question jurisdiction was appropriate. *Id.* at 816.

It is impossible to read *Merrell Dow* and come away with any reason to think removal would be appropriate here—much less an objectively reasonable reason. In that case, the plaintiff's claim was *premised* on a violation of federal law. To prove that claim, evidence *about federal law requirements* was necessary. A plaintiff cannot demonstrate negligence *per se* based on a federal-law violation without proving federal-law violations. Here, by contrast, *none of* the claims would require the State to prove any violations of federal law. If the complaint in *Merrell Dow* was not sufficient to support federal-question jurisdiction, it is impossible to read the

18

Petition here and believe perhaps it could have been filed in federal court in the first instance. It is little wonder Defendants did not cite *Merrell Dow* in their removal papers or their opposition to the motion to remand, despite their duty of candor to the District Court.

### 4.    Allowing federal jurisdiction would raise serious federalism concerns.

Finally, a federal court may exercise *Grable* jurisdiction only if it can be done without raising federalism concerns, i.e., if "federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts." *Grable*, 545 U.S. at 313. Although there are no federal-law questions to be found here, there are absolutely federal*ism* concerns lurking around every corner. This is, after all, a suit brought by the chief law-enforcement officer of a co-equal sovereign, the State of Texas. Defendants nonsensically toggled back to preemption, claiming that the "federal government" has "primacy" when it comes to labeling non-prescription drugs. ROA.431. At most that means the State's claims should fail. But Defendants' logic serves to confirm that the *State* has primacy when enforcing *its own* consumer protection statutes. Congress has never exercised its judgment to suggest those sorts of enforcement actions should be whisked away from state tribunals. Just the opposite.

When there is no federal-law issue presented, and when a sovereign has elected to proceed in its own courts, it is not difficult to ascertain the proper "division

19

of labor": the state court should hear the state-law claims. *Cf. Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence of state governments, . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined.").

**D.      There Is No Objectively Reasonable Basis To Believe That A Preemption Defense Is A Valid Basis For Removal.**

The only fair way to read the Removal Notice here is that Defendants tried to peg federal jurisdiction on the grounds that they wished to raise a federal impossibility-preemption defense. *See* ROA.422-423. (arguing that federal-question jurisdiction was proper because the case presents the question "whether Defendants had the authority and the duty under federal law to change the warning labels" (quoting Pet. ¶ 10)). Although they took pains not to characterize this as a preemption argument below, there is no question that it was (and is). Defendants primarily argued, for example, that "a federal issue [was] thus necessarily raised" because a court would need to "decid[e] whether the actions [the State] claims Defendants should take are even possible under federal law." ROA.427. That is a preemption defense pure and simple. *Compare id.*, *with Wyeth v. Levine*, 555 U.S. 555, 563 (2009) (defining the preemption question as whether it was "impossible" for a defendant to simultaneously comply with both state and federal law). And if there were any doubt on this point, the procedural history dispels it. Elsewhere in litigation involving Tylenol, Defendants have raised the exact same arguments that they said

20

gave rise to federal jurisdiction. *See generally In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*, No. 22CV8830 (DLC), 2023 WL 3026412 (S.D.N.Y. Apr. 20, 2023); *Davey v. Safeway Inc.*, No. 24CV064095, 2025 WL 1331951 (Cal. Super. May 5, 2025); Mot. to Dismiss Pls.' Compl. on Behalf of Defs. Johnson & Johnson et al.*,* No. 2022LA0782 (Ill. Cir. Ct. Jan. 19, 2024). And when they have done so, they have called them what they are: preemption defenses.[2]

Attempting removal on the basis of preemption is just as frivolous as trying to remove on the basis of, say, diversity jurisdiction here. Or admiralty jurisdiction for that matter. In jet-black ink, federal law makes clear that affirmative defenses— even if they are based on federal law—simply *do not* give rise to federal-question jurisdiction or provide a sound basis for removal. *See Merrell Dow*, 478 U.S. at 808 ("A defense that raises a federal question is inadequate to confer federal jurisdiction."); *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008) ("Anticipated or potential defenses, including defenses based on federal preemption, do not provide a basis for federal question jurisdiction."). And of course there is no room for "innovative" legal arguments about whether preemption is, in fact, an affirmative defense. It is. *Spear Mktg. Inc. v. BancorpSouth Bank*, 844 F.3d 464, 467 n.3 (5th Cir. 2016) (holding that preemption is "an affirmative defense").

---

[2] After this case was remanded to state court, Kenvue Brands LLC—one of the Defendants—filed a motion to dismiss on preemption grounds.

21

That is why the cases say—explicitly—that "defenses based on federal preemption, do not provide a basis for federal question jurisdiction." *Barrois*, 533 F.3d at 328. There is no "objectively reasonable" basis for Defendants here to have believed otherwise.[3]

*

In sum, no feature of the Petition gave Defendants a valid reason to remove. Diversity jurisdiction was impossible because the State of Texas is not a citizen of a State. Traditional federal-question jurisdiction was impossible because the claims in the Petition were created by the Texas Legislature rather than the federal government. *Grable* jurisdiction was impossible because precisely zero of its four prongs were satisfied—much less *all of them*. And Defendants' actual basis for removal—their desire to argue an affirmative defense based on preemption—is categorically forbidden as a basis for removal. None of this law was unsettled. Defendants instead decided to ignore it in order to gain a reprieve from their obligations to litigate in state court.

---

[3] Below, Defendants *conceded* that they were not raising a "complete preemption argument" as a "separate basis for jurisdiction." ROA.471; *see generally Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6–8 (2003).

## II.    THE DISTRICT COURT ERRED IN NOT AWARDING FEES AND COSTS.

### A. Costs And Fees Were Warranted Under § 1447(c).

Given the suit-stopping effect of removals, Congress created an explicit fee-shifting mechanism to discourage abuse. *See Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) ("[Section] 1447(c) is *not* a sanctions rule; it is a fee-shifting statute, entitling the district court to make whole the victorious party. An opponent's bad faith may strengthen the position of a party that obtained a remand, but it is not essential to an award." (citation omitted)); *see also Centro Cristiano Cosecha Final, Inc. v. Ohio Cas. Ins.*, No. H-10-1846, 2011 WL 240335, at *8 (S.D. Tex. Jan. 20, 2011) ("Section 1447(c) is not a sanctions rule but a fee-shifting statute that permits the court to make whole the victorious party, regardless of whether the removal was in bad faith or for improper purpose." (citation omitted)).

When a district court issues an "order remanding the case"—as happened here—the court may also "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Under governing Fifth Circuit precedent, these sorts of awards should be made unless the defendant had "an objectively reasonable basis" for removal. *Renegade Switch*, 857 F.3d at 694.

There was no such objectively reasonable basis here. "The well-pleaded complaint rule" governs "whether a case is removable from state to federal court."

23

*Renegade Switch*, 857 F.3d at 697. The Petition here contained nothing suggesting that the lawsuit "arose under" federal law. No federally created claims. No state claims that included as an element a federal-law violation. Nothing that even arguably would bring this case into *Grable* territory. *See* section I.C., *supra*. Nor is there some "split of authority" or "unsettled law" on any of the principles described above. *Renegade Switch*, 857 F.3d at 699 (suggesting that such features might make a removal reasonable). *Merrell Dow* is from the Supreme Court of the United States and fully controlling. This Court's *Grable* precedent is just as clear. There was no objectively reasonable basis for Defendants to think that perhaps federal court would have been the proper venue to file this lawsuit in the first instance. Fees and costs are warranted.

Though the District Court did not issue a reasoned decision—which is understandable after proceeding with such commendable dispatch—its comments from the bench suggest that it latched onto impermissible considerations when deciding the State's request for fees and costs. The District Court claimed some sympathy for the view that the well-pleaded complaint rule is not the best reading of statutory "arising under" jurisdiction. ROA.504. It claimed that many believe that federal defenses are as important as federal claims, and thus should be given audience in district court. ROA.454.

24

Those observations should have no bearing on the objective grounds for removal. The District Court is obviously learned, and scholars and legal commentators have long debated these points of law. But the fact that abstract first principles might lead the District Court in a different direction is obviously not a basis to support a removal that flouts century-old, binding Supreme Court precedent. Perhaps the Defendants could have escaped paying fees and costs for their baseless removals if they had candidly claimed to be seeking to preserve the right to ask the Supreme Court to overturn *Mottley* or *Merrell Dow*. That is obviously not what happened. And a district court does not act within its discretion by ignoring the arguments the parties actually made in favor of ones that have some academic appeal to conscientious jurists.

### B.    An Award Of Costs And Fees Is Necessary For Deterrence.

At bottom, this appeal is necessary to call off the games. In our common-law system, there will always be ambiguities, stray language, and so on, that unscrupulous counsel can exploit—or dream up *ex post*—to support an obvious tactical choice. And nowhere is this temptation more alluring than in the context of removal, where the action can be taken unilaterally by a defendant, with no judicial blessing, and with immediate concrete-walling of whatever impending disaster is about to occur in state court. But that is why § 1447(c) provides for fee shifting: to at least make defendants think twice before throwing unsupported Hail Marys into

25

removal notices. That is why Rule 11 requires that attorneys certify that delay is not their true end. And that is why the basis for removal must be "objectively reasonable." Under any fair reading of the binding precedents there is no way to say with a straight face that this should have been a federal case.

Defendants are represented by some of the best counsel in the country. They surely knew this case would eventually land back in state court, but likely assumed there was a fair shot it would first be tagged, transferred to the MDL, and placed on ice for months or longer before the inevitable roundtrip to Texas. That injustice was avoided because the District Court acted with commendable and unprecedented dispatch. Future district courts cannot be expected to move so swiftly. A decision not to award fees and costs will simply tell Defendants they made a great bet that just happened to not pay off in this unusual circumstance. Treating removal as a no-ante-required wager on delay is exactly the problem that fees and costs will deter.

## CONCLUSION

This Court should reverse the order denying costs and fees and remand with instructions to calculate the amount to award the State.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General
for Civil Litigation

**JOHNATHAN STONE**
Chief, Consumer Protection Division

**JERRY BERGMAN**
Deputy Chief
Consumer Protection Division

**KELLEY OWENS**
Assistant Attorney General

Consumer Protection Division
Office of the Texas Attorney General
P.O. Box 12548
Austin, Texas 78711
Telephone: (512) 463-2185
Fax: (512) 473-8301
Johnathan.Stone@oag.texas.gov
Jerry.Bergman@oag.texas.gov
Kelley.Owens@oag.texas.gov

Ashley C. Keller
Lauren E. Schultz
Keller Postman LLC
2333 Ponce de Leon Blvd
Suite R240
Coral Gables, FL 33134
Telephone: (312) 896-4516
ack@kellerpostman.com
lauren.schultz@kellerpostman.com

*/s/ John J. Snidow*
John J. Snidow
John M. Masslon II
Roseann R. Romano
Keller Postman LLC
1101 Connecticut Ave. NW
Suite 1100
Washington, DC 20036
Telephone: (202) 918-1123
jj.snidow@kellerpostman.com
john.masslon@kellerpostman.com
roseann.romano@kellerpostman.com

**Counsel for the State of Texas**

February 24, 2026

27

## CERTIFICATE OF SERVICE

I hereby certify that, on February 24, 2026 I served all counsel of record via the Court's CM/ECF system.

*/s/ John J. Snidow*
JOHN J. SNIDOW

February 24, 2026

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 6,374 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

I also certify that this brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it uses 14-point Times New Roman font.

*/s/ John J. Snidow*
JOHN J. SNIDOW

February 24, 2026