**No. 25-40755**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

THE STATE OF TEXAS,

*Plaintiff-Appellant*,

v.

JOHNSON & JOHNSON; KENVUE INCORPORATED; KENVUE BRANDS L.L.C., FORMERLY KNOWN AS JOHNSON & JOHNSON CONSUMER INC.,

*Defendants-Appellees*.

On Appeal from the United States District Court for the Eastern District of Texas
(Case No. 6:25-cv-442) (District Judge J. Campbell Baker)

## BRIEF OF APPELLEES

Geoffrey M. Wyatt
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (214) 432-5072
geoffrey.wyatt@kirkland.com

Eugene Temchenko
Taylin Antonick
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Texas 75205
Telephone: (214) 432-5072
eugene.temchenko@kirkland.com
taylin.antonick@kirkland.com

*Attorneys for Johnson & Johnson; Kenvue Inc.; Kenvue Brands LLC (f/k/a Johnson & Johnson Consumer Inc.)*

## CERTIFICATE OF INTERESTED PERSONS

I certify that the following listed persons and entities have an interest in this case's outcome as described in the fourth sentence of Fifth Circuit Rule 28.2.1. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

| Party | Counsel |
|---|---|
| Johnson & Johnson (Defendant-Appellee) | Geoffrey M. Wyatt<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Ave. NW<br>Washington, DC 20004<br><br>Eugene Temchenko<br>Taylin Antonick<br>Kirkland & Ellis LLP<br>4550 Travis Street<br>Dallas, Texas 75205<br><br>D. Bryan Hughes<br>Law Office of D. Bryan Hughes<br>110 North College Ave, Suite 207<br>Tyler, Texas 75702<br><br>Scott Keller<br>Lehotsky Keller Cohn LLP<br>200 Massachusetts Ave NW, Ste 700<br>Washington, DC 20001 |
| Kenvue Inc. (Defendant-Appellee) | Same as Johnson & Johnson |
| Kenvue Brands LLC (f/k/a Johnson & Johnson Consumer Inc.) (Defendant-Appellee) | Same as Johnson & Johnson |
| Kimberly-Clark Corporation (non-party) | N/A |

| Party | Counsel |
|---|---|
| The State of Texas (Plaintiff-Appellant) | Ken Paxton<br>Brent Webster<br>Ralph Molina<br>Austin Kinghorn<br>Johnathan Stone<br>Jerry Bergman<br>Kelley Owens<br>Office of the Texas Attorney General<br>PO Box 12548<br>Austin, TX 78711<br><br>Ashley C. Keller<br>Lauren E. Schultz<br>Keller Postman LLC<br>2333 Ponce de Leon Blvd, Suite R240<br>Coral Gables, FL 33134<br><br>John J. Snidow<br>John M. Masslon II<br>Roseann R. Romano<br>Keller Postman LLC<br>1101 Connecticut Ave. NW Suite 1100<br>Washington, DC 20036 |

*/s/ Geoffrey M. Wyatt*
GEOFFREY M. WYATT
*Counsel for Appellees*

April 27, 2026

ii

## STATEMENT REGARDING ORAL ARGUMENT

Appellees Johnson & Johnson, Kenvue Inc., and Kenvue Brands LLC respectfully submit that oral argument is not warranted in this matter. This appeal involves the District Court's denial of Appellant the State of Texas's request for costs and fees under 28 U.S.C. § 1447(c), a matter over which the District Court has broad discretion. The facts and legal arguments bearing on whether the District Court properly exercised its discretion are adequately presented in the briefs and record, and oral argument would not significantly aid the decisional process. Indeed, Appellant's assertion that oral argument is needed to "clarify" the law as to the issues on appeal, Br. at iii, is a tacit concession that Appellees' removal was colorable and supports summary affirmance without argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..................................................... i

STATEMENT REGARDING ORAL ARGUMENT ......................................... iii

JURISDICTIONAL STATEMENT .................................................................1

INTRODUCTION .........................................................................................2

STATEMENT OF ISSUES .............................................................................6

STATEMENT OF THE CASE ........................................................................7

SUMMARY OF ARGUMENT .......................................................................11

STANDARD OF REVIEW ...........................................................................14

ARGUMENT ..............................................................................................15

I.    APPELLEES HAD OBJECTIVELY REASONABLE GROUNDS
      TO REMOVE THE PETITION. .......................................................15

      A.    The Petition Necessarily Raises Federal Issues. ...................17

      B.    The Federal Issues Are Actually Disputed. ..........................23

      C.    The Federal Issues Are Substantial. ....................................25

      D.    The Federal Issues Are Capable Of Resolution Without
            Disturbing The Federal-State Balance. ................................27

II.   EVEN IF THIS COURT DOES NOT BELIEVE THE
      REMOVAL WAS OBJECTIVELY REASONABLE, IT
      SHOULD DEFER TO THE DISTRICT COURT'S
      DETERMINATION AND AFFIRM. ...............................................31

CONCLUSION ..........................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Ins. Co. v. Abshire*,
   574 F.3d 267 (5th Cir. 2009) ...................................................14, 15, 31

*Bd. of Comm'rs of Se. La. Flood Prot. Auth.-East v. Tenn. Gas
   Pipeline Co.*,
   850 F.3d 714 (5th Cir. 2017) ...........................................................*passim*

*CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*,
   638 F. App'x 255 (5th Cir. 2015) .........................................................32

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
   463 U.S. 1 (1983) ....................................................................................16

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)...........................................................................*passim*

*Gunn v. Minton*,
   568 U.S. 251 (2013)..........................................................................25, 27

*In re Zyprexa Prods. Liab. Litig.*,
   Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 WL 398378
   (E.D.N.Y. Feb. 12, 2008)...............................................................*passim*

*Lee v. Advanced Fresh Concepts Corp.*,
   76 F. App'x 523 (5th Cir. 2003) ......................................................12, 29, 31

*Lott v. Pfizer, Inc.*,
   492 F.3d 789 (7th Cir. 2007) ................................................................29

*Merrell Dow Pharm., Inc. v. Thompson*,
   478 U.S. 804 (1986)..........................................................................*passim*

*Miranti v. Lee*,
   3 F.3d 925 (5th Cir. 1993) ....................................................................14

*Mitchell v. Advanced HCS, L.L.C.*,
   28 F.4th 580 (5th Cir. 2022) ........................................................16, 18, 20

*Montgomery v. Medtronic Sofamor Danek USA, Inc.*,
No. 2:14-CV-2212-JTF-cgc, 2014 WL 12611256 (W.D. Tenn.
June 26, 2014) ...............................................................16, 22, 23, 27

*Omega Hosp., LLC v. La. Health Serv. & Indem. Co.*,
592 F. App'x 268 (5th Cir. 2014) ...................................................15

*H.R. ex rel. Reuter v. Medtronic, Inc.*,
996 F. Supp. 2d 671 (2014) .......................................................22, 26

*Singh v. Duane Morris LLP*,
538 F.3d 334 (5th Cir. 2008) ...........................................................27

*State of Texas v. Johnson & Johnson et al.*,
Cause No. 2025-348 (Dist. Ct. 123d Jud. Dist. Panola Cty., Tex.
Nov. 5, 2025) ...............................................................................8, 10

*State of Texas v. Johnson & Johnson, et al.*,
No. 6:25-cv-442-JCB, ECF No. 4 (E.D. Tex. Nov. 7, 2025) .............8

*Valdes v. Wal-Mart Stores, Inc.*,
199 F.3d 290 (5th Cir. 2000) ...........................................11, 14, 15, 31

**Statutes**

21 U.S.C. § 355h(b)(5)(B)(i) .................................................................18

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 .................................................................................1, 15

28 U.S.C. § 1367 ......................................................................................8

28 U.S.C. § 1407(a) .................................................................................8

28 U.S.C. § 1441 ................................................................................1, 15

28 U.S.C. § 1447(c) ........................................................................*passim*

Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.47 ..................7

Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code
§ 24.005..............................................................................................7

**Rule**

Fed. R. Civ. P. 11 ....................................................................................32

**Other Authorities**

21 C.F.R. § 201.63(a)..............................................................................18

21 C.F.R. § 330.1(c)(2) ...........................................................................18

21 C.F.R. § 343.1 ....................................................................................18

## JURISDICTIONAL STATEMENT

Appellee's position was that the District Court had subject matter jurisdiction over the underlying controversy under 28 U.S.C. §§ 1331 and 1441. Regardless, the District Court's Order denying the State of Texas's request for costs and fees in connection with its motion to remand was a final decision over which this Court has appellate jurisdiction under 28 U.S.C. § 1291.

**INTRODUCTION**

Acetaminophen ("APAP") is a critical over-the-counter ("OTC") medication for the treatment of pain and fever in pregnant women. Even though the United States Food and Drug Administration (the "FDA") and independent medical bodies have repeatedly endorsed APAP's safety and efficacy, the State of Texas, represented by its Attorney General and outside contingency-fee counsel, has filed a lawsuit alleging that prenatal use of—and early childhood exposure to—Tylenol (the most popular brand of APAP) causes the development of Autism Spectrum Disorder ("ASD") or Attention Deficit Hyperactivity Disorder ("ADHD"). Although the Petition purports to arise under state law—i.e., a Texas consumer protection statute—this lawsuit is a clear attempt to enforce federal law and usurp the federal government's oversight of APAP by effectively prohibiting the sale and marketing of Tylenol products throughout the State of Texas. Accordingly, Appellees Johnson & Johnson, Kenvue Inc., and Kenvue Brands LLC (together, "Appellees")[1] removed this case to federal court, arguing that the Petition presents a substantial federal question under the Supreme Court's decision in *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).

---

[1]    Contrary to Appellant's claim, only Kenvue Brands LLC manufactures or sells Tylenol in Texas. Johnson & Johnson and Kenvue Inc. do not.

Although the District Court ultimately found that the requirements of *Grable* were not satisfied and granted the State's motion to remand (a decision with which Appellees respectfully disagree), the *sole* question presented in this appeal is whether the District Court abused its discretion in denying the State's accompanying request for attorneys' fees under 28 U.S.C. § 1447(c). The answer to that straightforward (and dispositive) question is clearly "No" because Appellees had an objectively reasonable basis for removal. The Petition's claim for deceptive practices necessarily raises disputed issues of federal law because it is grounded in the core allegation that Appellees had a "duty" to update the Tylenol label. The source of any such duty could only be federal law, which supplies the exclusive mechanism for changing the contents of FDA-approved labeling. Moreover, the federal issues are substantial because if the State were to succeed, Appellees would effectively be prohibited from selling an FDA-approved drug bearing its FDA-approved warning label throughout the State of Texas. And the exercise of federal jurisdiction over an enforcement action brought by a single state would not open the floodgates to a "a tremendous number" of other cases into the federal system. *Grable*, 545 U.S. at 318.

As even the State is forced to acknowledge, the District Court found it "debatable" that the Petition met the requirements for federal jurisdiction under *Grable*, Br. at 4, effectively conceding that the removal was objectively well-

3

grounded. The State nonetheless argues that Appellees should not have removed the Petition in light of the Supreme Court's pre-*Grable* decision in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986). But *Merrell Dow* does not even support Appellant's position on federal subject matter jurisdiction, much less justify the extraordinary step of imposing attorneys' fees under 28 U.S.C. § 1447(c). *Merrell Dow* involved a routine personal injury lawsuit, not a sweeping attempt by a state to upend the federal government's regulation of OTC medications. And the Supreme Court explained in *Grable*, the concern animating *Merrell Dow*'s rejection of jurisdiction was that finding a substantial federal question would invite an untold number of similar lawsuits into the federal system. Again, no such concern is warranted here.

The State also accuses Appellees of attempting to "game the system," Br. at 5, but exercising the right to removal is not "gam[ing] the system." The State's attacks on this score are particularly misplaced because the State itself engaged in forum-shopping. This case is, at bottom, an effort to circumvent the federal MDL court's order rejecting expert opinions that acetaminophen exposure can cause ASD or ADHD as unscientific, and there is no evident reason to have brought this suit in Panola County, Texas, other than the fact that the State expected a favorable hearing there. Regardless, the pertinent question is whether Appellees articulated a good-

faith basis for removal. Because they did, the State's attacks on Appellees' motives are irrelevant.

For all of these reasons, Appellees had an objectively reasonable basis to remove the Petition, and the District Court's order denying fees and costs should be affirmed.

## STATEMENT OF ISSUES

Whether the District Court properly exercised its discretion under 28 U.S.C. § 1447(c) to deny the State of Texas's request for costs and attorneys' fees in connection with its motion to remand the case to state court.

## STATEMENT OF THE CASE

The State initiated the underlying lawsuit on October 27, 2025 by filing an Original Petition (the "Petition") in the 123rd District Court of Panola County, Texas (the "Panola County Court"). ROA 54-103 (Petition). The Petition includes two claims. First, the Petition alleges that Appellees violated the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.47, by failing to warn consumers of a supposed risk that prenatal or early childhood exposure to Tylenol could cause a child to subsequently develop ASD or ADHD. ROA 96-97 (Pet. ¶¶ 162-166). Second, the Petition alleges that Appellees violated the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code § 24.005, by engaging some years earlier in a corporate transaction by which Appellee Johnson & Johnson spun off Appellees Kenvue Inc. and Kenvue Brands LLC and transferred certain assets and liabilities to them. ROA 98-100 (Pet. ¶¶ 167-187).

After filing the Petition, the State took no further action for more than a week, waiting until November 4, 2025 to serve Appellees. The very next day, however, the State moved for a TRO and a temporary injunction seeking two forms of unprecedented, emergency relief from the Panola County Court. First, the State sought an order effectively barring the marketing and sale of Tylenol in Texas unless the Tylenol label is altered to include language warning of the purported risk of ASD or ADHD. Second, the state sought an order prohibiting Appellee Kenvue from

paying its upcoming quarterly dividend, on the ground that this routine corporate transaction was supposedly a fraudulent transfer in violation of TUFTA. *See* Mot. for Temp. Restraining Order and Temp. Injunction, *State of Texas v. Johnson & Johnson et al.*, Cause No. 2025-348 (Dist. Ct. 123d Jud. Dist. Panola Cty., Tex. Nov. 5, 2025). The Panola County Court then scheduled a hearing on the State's TRO Motion for November 7, 2025.

Appellees timely removed the State's lawsuit to the U.S. District Court for the Eastern District of Texas by filing a Notice of Removal.[2] ROA 6-19 (Appellees' Notice of Removal). The Notice of Removal invoked *Grable* jurisdiction and explained why the Petition's DTPA claim satisfies each prong of the four-factor *Grable* test.[3] ROA 12-17 (Notice of Removal ¶¶ 19-31). First, as explained above,

---

[2]     Soon after filing the Notice of Removal, Appellees also filed a Motion to Stay the case pending transfer to the aforementioned MDL. *See* Defs.' Mot. and Mem. of Law in Supp. of Mot. to Stay, *State of Texas v. Johnson & Johnson, et al.*, No. 6:25-cv-442-JCB, ECF No. 4 (E.D. Tex. Nov. 7, 2025). This was not, as the State suggests, an attempt to "delay[] . . . the State's case for months." Br. at 8. Rather, transfer to the MDL would have been appropriate because this case, like the MDL cases, raises the question whether there is a causal link between prenatal or early childhood acetaminophen exposure and subsequent development of ASD or ADHD. Transfer would therefore have promoted the interests of efficiency and judicial economy. *See generally id.*; *see also* 28 U.S.C. § 1407(a) (stating that the purpose of multidistrict litigation is to "promote the just and efficient conduct of such actions").

[3]     The Notice of Removal does not assert *Grable* jurisdiction with respect to the Petition's TUFTA claim, but the District Court had supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367.

the Petition necessarily raises a federal issue because it presents the question whether Appellees had "the authority and the duty," under the federal regulatory framework governing OTC drugs, to change the Tylenol warning label to address the supposed link between that product and ASD or ADHD. *Id.* at 13-14 (Notice of Removal ¶ 23 (quoting Pet. ¶ 10)). Second, these federal issues are actually disputed because Appellees contend that they have neither the authority nor the duty under federal law to modify the Tylenol warning label in the manner the State demands. ROA 15 (Notice of Removal ¶ 26). Third, the federal issues are substantial because they directly implicate the primacy of the FDA regulatory system and the ability of that agency to approve OTC drugs as safe and effective nationwide. ROA 15-16 (Notice of Removal ¶¶ 27-28). And fourth, exercising jurisdiction over this Petition carries little risk of "disturb[ing] any congressionally approved balance of federal and state judicial responsibilities." ROA 16-17 (Notice of Removal ¶¶ 30-31).

On November 7, the State filed an Emergency Motion to Remand in the U.S. District Court for the Eastern District of Texas. ROA 233-250. Arguing that the removal was "frivolous," ROA 246 (Mot. to Remand at 14), the State also asked the District Court to award it costs and fees in connection with its remand motion under 28 U.S.C. § 1447(c). Appellees filed an opposition brief on both counts. ROA 420-434. On November 8, after a hearing, the District Court held that it lacked subject matter jurisdiction over the Petition, under *Grable* or otherwise, but that Appellees'

9

arguments in favor of removal were "within the bounds of zealous advocacy." ROA 485 (Oral Argument Tr. 37:14-19); *see also* ROA 449-517 (transcript of oral argument). Accordingly, the District Court granted the State's Motion to Remand and remanded the case to the Panola County Court, but the District Court denied the State's request for costs and fees. ROA 439 (District Court's Order).

Following remand, on November 14, 2025, the Panola County Court held a hearing on the State's Motion for a TRO. That court entered an order the same day denying the Motion. Order Denying Plaintiff's Motion for Temporary Restraining Order, *State of Texas v. Johnson & Johnson, et al.*, Cause No. 2025-348 (Dist. Ct. 123d Jud. Dist. Panola Cty., Tex. Nov. 14, 2025).

On November 17, 2025, the State filed a Notice of Appeal in the District Court challenging the Court's decision to deny costs and fees under 28 U.S.C. § 1447(c). ROA 445.

**SUMMARY OF ARGUMENT**

A district court may not award costs and fees under 28 U.S.C. § 1447(c) where the removing party "had objectively reasonable grounds to believe the removal was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). Appellees had objectively reasonable grounds to believe the removal was legally proper because Appellant's claims raise a substantial federal question.

Under the substantial federal question doctrine, federal jurisdiction exists where "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal question jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721-22 (5th Cir. 2017); *see Grable*, 545 U.S. at 312.

Each of these four factors is satisfied by the underlying case. First, the Petition necessarily raises a federal issue because the State's DTPA claim alleges that Appellees violated a duty arising under federal law, or that Appellees otherwise violated the FDA's statutory or regulatory regime in marketing and selling Tylenol. ROA 58 (Pet. ¶ 10); ROA 82 (Pet. ¶ 108). Second, this federal issue is actually disputed because Appellees contest the notion that they somehow violated federal law. Third, the federal issues are substantial—not only to the parties but to the federal system as a whole, *see Tenn. Gas*, 850 F.3d at 724—because this lawsuit

implicates the primacy of the federal drug regulatory regime over the State's attempt to usurp it. And <u>fourth</u>, the exercise of federal jurisdiction in this case would not disturb the balance of federal and state judicial responsibilities because this case is an enforcement action brought by a state, a small category of lawsuits that does not threaten to overwhelm the federal docket. This fact distinguishes *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), which held that exercising *Grable* jurisdiction over an ordinary personal injury claim would have brought "a tremendous number of cases" into the federal system, *Grable*, 545 U.S. at 318. Appellees' decision to remove the Petition was therefore objectively reasonable.

Even if this Court were to disagree with the above analysis on the merits, the Court should nevertheless hold that the removal was objectively reasonable. The District Court issued a well-reasoned decision, within the heartland of its discretion, to deny the State's request for costs and fees under 28 U.S.C. § 1447(c). *Lee v. Advanced Fresh Concepts Corp.*, 76 F. App'x 523, 525 (5th Cir. 2003); *see* ROA 485 (Oral Argument Tr. 37:20-25) (District Court's remark at oral argument that there is an "arguable case" as to whether *Grable* jurisdiction applies, meaning that removal was objectively reasonable). Moreover, Appellees relied on analogous cases like *In re Zyprexa Products Liability Litigation*, Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 WL 398378 (E.D.N.Y. Feb. 12, 2008), and made colorable

arguments to distinguish *Merrell Dow*, 478 U.S. 804. This Court should affirm the

decision below on any or all of these rationales.

## STANDARD OF REVIEW

The District Court has broad discretion whether to award or deny costs and fees under 28 U.S.C. § 1447(c), except that the Court may not award costs and fees where "the defendant had objectively reasonable grounds to believe the removal was legally proper," *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000); *see also Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993) ("Nothing in this statute indicates how a court is to exercise its discretion in deciding whether to award costs and expenses."). This Court reviews the District Court's decision for abuse of discretion. *See Valdes*, 199 F.3d at 292; *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 280 (5th Cir. 2009).

14

**ARGUMENT**

Fifth Circuit caselaw unequivocally provides that costs and fees may not be awarded under 28 U.S.C. § 1447(c) where "the defendant had objectively reasonable grounds to believe the removal was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000); *see also Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 280 (5th Cir. 2009) (similar). The bar for what is objectively reasonable is low and requires only that the removing party "could conclude from [existing] case law that its position was not an unreasonable one." *Valdes*, 199 F.3d at 293; *see also Omega Hosp., LLC v. La. Health Serv. & Indem. Co.*, 592 F. App'x 268, 271 (5th Cir. 2014) (reversing an award of attorneys' fees "in light of authority from sister circuits arguably supporting" removal).

For all of the following reasons, Appellees' Notice of Removal *was* proper on the merits, and the U.S. District Court for the Eastern District of Texas should have exercised jurisdiction under *Grable*. At a minimum, Appellees had objectively reasonable grounds to believe the removal was legally proper, which precludes an award of fees.

## I.    APPELLEES HAD OBJECTIVELY REASONABLE GROUNDS TO REMOVE THE PETITION.

Federal district courts have removal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see id.* § 1441. The most common situation in which such "arising under" jurisdiction

15

exists is where federal law creates the cause of action. Both the U.S. Supreme Court and this Court, however, have long recognized that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022). This doctrine, moreover, is not "rarely invoked," as the State claims, Br. at 10, but rather "widely analyzed and followed" by federal courts around the country, *Montgomery v. Medtronic Sofamor Danek USA, Inc.*, No. 2:14-CV-2212-JTF-cgc, 2014 WL 12611256, at *5 (W.D. Tenn. June 26, 2014).

To exercise jurisdiction under *Grable*, a court must find that four factors are satisfied: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal question jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721-22 (5th Cir. 2017). Each of these factors is satisfied here. Moreover, the quintessential claim over which *Grable* jurisdiction exists is "a state-law claim premised on some component of federal law." *Mitchell*, 28 F.4th at 588 (citing *Grable*); *see also Tenn. Gas*, 850 F.3d at 723. ("[A] case arises under federal law where 'the vindication of a right under state law necessarily turn[s] on some construction of federal law.'") (quoting *Franchise Tax Bd. v. Constr.*

16

*Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)). This case involves precisely that type of claim, as explained more fully below. Appellees therefore, at the very least, had objectively reasonable grounds to remove the Petition.

### A.     The Petition Necessarily Raises Federal Issues.

First, there was an objectively reasonable ground to assert that the District Court had *Grable* jurisdiction because "resolving a federal issue is necessary to resolution of the state-law claim[.]" *Tenn. Gas*, 850 F.3d at 721. The Petition's theory is that Appellees violated the DTPA by failing to warn on the Tylenol label of the supposed risk that prenatal or early childhood exposure to acetaminophen causes ASD or ADHD, *see, e.g.*, ROA 55-58, 78-84 (Pet. ¶¶ 1-10, 93-115). More specifically the Petition repeatedly asserts that Appellees violated a "duty" to change the Tylenol warning label to address the supposed risks of ASD or ADHD. ROA 58 (Pet. ¶ 10 ("Defendants had the authority and the duty to change the warning labels of Tylenol products based on the significant scientific evidence, but chose not to.")); ROA 82 (Pet. ¶ 109 ("Defendants have the ability and the duty to update the Tylenol label to ensure that it provides adequate warnings to consumers.")). But such a duty to change the warning label of an FDA-regulated drug could only arise under *federal* law, not Texas law. The Petition's DTPA claim, in other words, raises a federal issue because the State's claim is that Appellees violated a federal duty.

17

The federal nature of the Petition's DTPA claim is apparent "on the face of the complaint." *Mitchell*, 28 F.4th at 589-90. That is because the Petition itself acknowledges that Tylenol is regulated by the FDA, ROA 57-58 (Pet. ¶ 8), and the obligation to update its warning label thus arises under the federal regulatory regime for OTC drugs, ROA 83 (Pet. ¶ 114 ("The FDA has recognized that marketers have a duty to warn the public about a drug's potential dangers, even if the underlying science is not conclusive.")). As the Petition recognizes, acetaminophen, like most other OTC drugs, is governed by a "monograph" promulgated by the FDA, which specifies, among other things, the contents of the warning label that must appear on the drug's packaging. *See* U.S. FDA, Over-the-Counter (OTC) Monograph M013, § M013.50: Internal Analgesic, Antipyretic, and Antirheumatic Drug Products for Over-the-Counter Human Use (Oct. 14, 2022); 21 C.F.R. § 343.1. FDA regulations require Appellees to market Tylenol using the "exact language" prescribed by the FDA's Monograph, 21 C.F.R. § 330.1(c)(2), including, as relevant here, a uniform national "Pregnancy Warning," 21 C.F.R. § 201.63(a). Significantly, if new scientific evidence justified a change to the Tylenol warning label, the federal regulatory regime provides an exclusive process by which a drug manufacturer may petition the FDA to promulgate an amended Monograph enshrining such changes. 21 U.S.C. § 355h(b)(5)(B)(i). In other words, not only does federal law specify the contents of the Tylenol warning label, but any authority or duty that Appellees might

18

have to add new warnings to the Tylenol label could only arise under federal law, not state law. The Petition's failure-to-warn claim therefore necessarily raises an issue of federal law, because the Petition asserts that Appellees breached a federal duty to update the Tylenol warning label.

The federal nature of the Petition's failure-to-warn claim is further underscored by the Petition's reliance on 2025 statements by Health and Human Services Secretary Robert F. Kennedy, Jr. and other federal officials regarding the purported association between acetaminophen and ASD or ADHD. *See, e.g.*, ROA 55 (Pet. at 2 ("[T]he federal government confirmed . . . [that] acetaminophen use during pregnancy likely causes conditions like ASD and ADHD.") (citing FDA's September 2025 press release entitled "FDA Responds to Evidence of Possible Association Between Autism and Acetaminophen Use During Pregnancy")); ROA 93-96 (Pet. ¶¶ 149-161 (describing Press Release and related statements by Secretary Kennedy)). These statements are not, as the State contends on appeal, "useful context and nothing more." Br. at 15. Rather, the plain implication of these allegations is that these officials' evaluation of acetaminophen's risk-benefit profile under the federal regulatory framework created a duty on Appellees' part to add new language to the Tylenol warning label—in other words, that Appellees had some duty to act because of these officials' interpretation of the science. This further

19

confirms that the Petition's failure-to-warn theory is predicated on Appellees' alleged violation of a federal duty.

Moreover, to the extent the Petition can be read to allege an affirmative misrepresentation theory under the DTPA, that theory would also necessarily be federal in nature. For example, the Petition alleges that Appellees misrepresented the safety profile of Tylenol to the consuming public by "represent[ing] acetaminophen as FDA Pregnancy Category B," when in fact the drug was allegedly "placed [by the FDA] in the more dangerous Category C." ROA 84 (Pet. ¶¶ 116, 119). This, too, inescapably amounts to an allegation that Appellees violated federal law (which defines "Category B" and "Category C" designations), and that this violation of federal law somehow also constitutes a violation of the DTPA.

These facts bring this case well within the scope of *Grable* jurisdiction as defined by this Court's cases, which ask whether the state-law claim is premised on some violation of federal law. *See Mitchell*, 28 F.4th at 588 ("The type of claim that creates a federal question under *Grable* is typically a state-law claim premised on some component of federal law. For example, a negligence claim that is premised on the existence of a duty established by federal law creates a federal question."); *Tenn. Gas*, 850 F.3d at 722 (affirming denial of motion to remand where plaintiff's state-law theory concerned federal regulatory scheme under the Clean Water Act and other federal statutes and "dr[ew] on federal law as the exclusive basis for

holding [d]efendants liable for some of their actions"). This is precisely such a case because the State's DTPA claim is premised on the notion that Appellees violated a duty arising under federal law to update the Tylenol warning label or otherwise violated the FDA regulatory scheme governing acetaminophen.

This case is also on all fours with other instances where federal courts found *Grable* jurisdiction to exist over a state-law claim and accordingly denied a plaintiff's motion to remand. In *In re Zyprexa Products Liability Litigation*, Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 WL 398378 (E.D.N.Y. Feb. 12, 2008), the Attorney General of Montana sued the manufacturer of Zyprexa, an FDA-approved antipsychotic drug, under various state-law theories, alleging, among other things, that the manufacturer had marketed the drug in a misleading manner in violation of Montana law. *Id.* at *1-2. The manufacturer defendant removed the case from state court to federal court, and then successfully moved to transfer the case into a pending MDL overseeing numerous personal injury claims involving the drug. *Id.* at *1-3. The Montana Attorney General moved to remand, but the MDL court denied the motion on the ground that it had federal question jurisdiction under *Grable*. *Id.* at *3-4. The court reasoned that the Montana Attorney General's claim necessarily raised a federal issue because the complaint made "alleged violations of federal law . . . essential to [the] case." *Id.* at 5. Specifically, the court noted that the complaint alleged that the defendant manufacturer had "violated its obligations

21

under law," but there, as here, that language "necessarily refers to violations of federal law." *Id.*

Similarly, in *H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671 (2014) (*Medtronic I*) and *Montgomery v. Medtronic Sofamor Danek USA, Inc.*, No. 2:14-CV-2212-JTF-cgc, 2014 WL 12611256 (W.D. Tenn. June 26, 2014) (*Medtronic II*), the plaintiffs brought negligence, products liability, and misrepresentation claims against the manufacturer of a medical device called the Infuse Bone Graft. In both cases, the defendant removed the plaintiff's complaint from state court to federal court, and the plaintiff moved to remand. In each case, however, the court denied the motion to remand on the ground that federal question jurisdiction existed under *Grable*. There, as here, the complaints could only be read to suggest that the plaintiff's alleged violation of state law was predicated on a violation of the FDA regulatory regime governing the device at issue. Because these cases necessarily turned on the interpretation of the FDA provisions at issue, they raised a federal question. *Medtronic I*, 996 F. Supp. 2d at 679 (complaint raised a federal question because "plaintiffs cannot prevail unless they allege and ultimately prove a violation of federal law"); *Medtronic II*, 2014 WL 12611256, at *5 ("Plaintiff's claims undoubtedly require this Court to examine federal law, and, even more specifically, examine federal requirements imposed by the FDA . . . .").

22

The *Zyprexa* and *Medtronic* cases, at the very least, provide a colorable basis for Appellees to have concluded from existing caselaw that their position was not unreasonable. Tellingly, the State's brief on appeal does not even cite these decisions, much less explain how they provided Appellees with anything other than an objectively reasonable basis to remove the Petition.

For all of these reasons, it was objectively reasonable for Appellees to conclude that the Petition raised federal issues.

## B.      The Federal Issues Are Actually Disputed.

There was also an objectively reasonable ground to believe that the federal issues raised in the Petition are "actually disputed." *Tenn. Gas*, 850 F.3d at 721. Appellees dispute that they had either "the authority [or] the duty," ROA 58 (Pet. ¶ 10), under federal law to amend the Tylenol warning label to reflect a supposed risk of ASD or ADHD—whether pursuant to the statutory provisions above governing monograph changes or as a result of the recent statements by federal officials. Appellees similarly dispute that they violated any FDA rule or regulation in their characterizations of the safety profile of Tylenol, ROA 84 (Pet. ¶¶ 116, 119).

For this reason, the State is incorrect to assert that it can "satisfy its burden of proof without ever once mentioning federal law[.]" Br. at 16. To the contrary, in order to succeed on its DTPA claim, the State would have to demonstrate that Appellees violated a federal duty to petition the FDA to update the Tylenol

23

Monograph, or that Appellees otherwise violated federal law in supposedly representing that acetaminophen had been categorized as FDA Pregnancy Category B. Alternatively, the State could succeed on its claim by demonstrating that the recent statements by Secretary Kennedy and other federal officials imposed some binding obligation on Appellees as a matter of federal law to update the Tylenol warning label. But that, too, is disputed. The State's response is that "the words they uttered are not actually disputed because they are matters of undeniable record." Br. at 16 (emphasis omitted). But that is beside the point: It is not the words themselves that Appellees dispute, but the legal implications of those words.

Along the same lines, the State errs by characterizing Appellees' arguments as being about preemption. Although FDA statutes and regulations do indeed preempt Texas state law, that was not the basis for Appellees' removal. Rather, as explained above, the elements of Appellant's DTPA claim are expressly predicated on supposed violations of federal law by Appellees (i.e., breaching a federal duty to change the label, and violating federal requirements pertaining to the pregnancy categorization of a drug), which Appellees dispute. The second *Grable* factor is therefore satisfied, and the District Court had removal jurisdiction for this additional reason. At the very least, Appellees had an objectively reasonable ground for arguing that this factor was satisfied, and the mere fact that Appellees' ground for removal

24

had implications not only for jurisdiction but also preemption does not undermine that conclusion.

### C.    The Federal Issues Are Substantial.

Appellees also had an objectively reasonable ground to argue that the disputed federal questions raised in this case are substantial. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole," *Tenn. Gas*, 850 F.3d at 723-24 (quoting *Gunn v. Minton*, 568 U.S. 251, 260 (2013)), and the issues presented here are crucial to the federal system as a whole because they directly implicate the primacy of the federal drug regulatory regime. Accordingly, Appellees properly argued that the third *Grable* factor is satisfied.

By way of this lawsuit, the State seeks to hold Appellees liable for marketing and selling an FDA-approved drug bearing its FDA-approved warning label. That is remarkable enough. But the State also—astonishingly—seeks to enjoin Appellees from "manufacturing, distributing, advertising, or selling Tylenol in Texas" until Appellees implement the labeling changes the Petition demands. ROA 100-101 (Pet. ¶ 189). Such relief would effectively amount to banning Tylenol from being marketed and sold in Texas—the second-most-populous state in the country—and, at the time Appellees removed the Petition, the State was seeking a TRO that would have done just that. As a result, the outcome the State seeks in this lawsuit would not only wreak havoc on the health of pregnant women, *see* ROA 64 (Pet. ¶ 38)

(acknowledging that "acetaminophen is estimated to be used by up to 65% of women during pregnancy"), but would clearly implicate substantial federal issues regarding the supremacy of the FDA regulatory system.

Rather than engage with this argument, the State's brief merely asserts that this dispute lacks "weighty questions of federal law" and "is important to the actual parties" only. Br. at 16-17 (emphasis omitted). This is unpersuasive.[4] An open challenge by a state to a federally regulated and approved OTC drug—which is exactly what this lawsuit involves—presents a question that is important to the federal system as a whole.

Indeed, other courts have had no trouble finding similar issues relating to the federal drug regulatory regime to be "substantial" under *Grable*. In *Zyprexa*, for example, the Court found it "difficult to accept" that such questions could be anything other than substantial because relegating the interpretation of FDA statutes and regulations to state courts would risk a world where drug manufacturers were subjected to "at least fifty-one different" regulatory regimes. 2008 WL 398378, at *7; *see also Medtronic I*, 996 F. Supp. 2d at 680 (holding that "federal questions

---

[4]    To the extent the State relies on *Merrell Dow* for its position here, that reliance is misplaced. As discussed below, *Merrell Dow* principally concerns the fourth *Grable* factor—the balance of federal and state judicial responsibilities. But there can be little dispute that questions concerning the interpretation of the FDA's drug regulatory regime are substantial to the federal system as a whole.

about federal regulation of [FDA-regulated] medical devices" are substantial under *Grable*); *Medtronic II*, 2014 WL 12611256, at *8 (holding that the "federal interest" in the interpretation of the FDA medical device regime "is substantial"). The same is true here, and the State offers no persuasive response.[5]

### D. The Federal Issues Are Capable Of Resolution Without Disturbing The Federal-State Balance.

Fourth, Appellees had an objectively reasonable basis to argue that the last *Grable* factor is satisfied because the District Court could have exercised jurisdiction over the Petition without "disturb[ing] the balance of federal and state judicial responsibilities." *Tenn. Gas*, 850 F.3d at 722. The chief concern underlying this factor is whether a federal court could exercise jurisdiction over a particular state-law claim without opening the floodgates to "a tremendous number of cases" coming into the federal system, *Grable*, 545 U.S. at 318; *see also Tenn. Gas*, 850 F.3d at 725 (asking whether "the implications for the federal docket" would be "severe").

---

[5]    Cases in which this Court or the U.S. Supreme Court have found a federal question *not* to be substantial—such as *Singh v. Duane Morris LLP*, 538 F.3d 334 (5th Cir. 2008) and *Gunn v. Minton*, 568 U.S. 251 (2013)—further illustrate Appellees' point. Each of these lawsuits was a malpractice action in which the federal issue was relevant only to the "case within a case" analysis that provides the causation element of a malpractice claim, *see Gunn*, 568 U.S. at 259. The federal question, accordingly, was significant only to the specific dispute between the parties. Here, by contrast, the State's Petition puts interpretation of the FDA drug regulatory regime directly at issue.

This case presents no such concern: Enforcement actions brought by states in their own name are a small category of cases—far smaller than the run-of-the-mill personal injury case brought by a private plaintiff. And exercising *Grable* jurisdiction over one such case, asserting a specific federal-law issue, does not risk disruption to the balance of federal and state judicial responsibilities.

*Merrell Dow* supports Appellees on this point, not Appellant. In *Merrell Dow*, the plaintiffs brought a negligence claim for injuries allegedly caused by ingestion of an FDA-approved medication marketed and sold by the defendant manufacturer. 478 U.S. at 805-06. Because the plaintiffs argued that the defendant was negligent per se due to an alleged violation of the FDA's prohibition on misbranding, the plaintiffs' state-law claim had a federal-law violation embedded as an element. *Id.* In other words, the state-law claim necessarily raised a substantial federal issue, thereby satisfying almost every factor of the test for federal jurisdiction subsequently elaborated in *Grable*. The exception was the fourth factor: Because the claim in *Merrell Dow* was an ordinary personal injury claim brought by a private plaintiff, exercising federal jurisdiction there would have attracted "a horde of original filings and removal cases" raising similar negligence claims. *Grable*, 545 U.S. at 318 (discussing *Merrell Dow*). The claim in *Merrell Dow*, therefore, would have been well-suited for federal question jurisdiction, but for the fact that there are innumerable other personal injury cases that would have been brought into the

28

federal system had jurisdiction been exercised there. The same concern is not present here, and *Merrell Dow* thus supports—and certainly does not preclude—the exercise of *Grable* jurisdiction over the State's Petition.

The State is therefore wrong to argue that *Merrell Dow* forecloses Appellees' petition. But even if this Court thought otherwise, it should still affirm the decision below: Appellees addressed *Merrell Dow* at oral argument before the District Court and provided non-frivolous grounds to distinguish it, and that is all the objective reasonableness test requires. ROA 477-479 (Oral Argument Tr. 29:21-31:2) (Appellees' counsel below distinguishing *Merrell Dow* as a personal injury lawsuit, as opposed to an enforcement action brought by a state); *see Lee v. Advanced Fresh Concepts Corp.*, 76 F. App'x 523, 524-25 (5th Cir. 2003) (denying motion for fees and costs under § 1447(c) even where case was "nearly indistinguishable" from one where federal jurisdiction was found not to exist, and where removing party "tried and failed" to distinguish that adverse precedent); *see also, e.g.*, *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007) (holding that defendant acted reasonably in removing suit when at the time of removal no circuit court had rejected the defendant's argument supporting removal and there was a split in authority among district courts). The State fixates on the fact that Appellees did not cite *Merrell Dow* in their removal papers, but the State ignores that the *Merrell Dow* decision was discussed extensively at oral argument below.

29

The State also argues on appeal that *Grable* jurisdiction is unwarranted here because "[t]his is . . . a suit brought by the chief law-enforcement officer of a co-equal sovereign, the State of Texas," and "when a sovereign has elected to proceed in its own courts," the exercise of jurisdiction by a federal court would improperly trample on the State's authority. Br. at 19. But this argument identifies the wrong kind of federalism concern. *Grable* is not focused on state sovereignty generally, but rather on the narrower issue of "the balance of federal and state *judicial* responsibilities." *Tenn. Gas*, 850 F.3d at 722 (emphasis added). Indeed, the State cites no case in which a federal court declined to exercise *Grable* jurisdiction on the ground that the lawsuit had been brought by a state. Moreover, the State ignores *Zyprexa*, which, as noted above, was a lawsuit brought by the Attorney General of Montana where a federal court exercised *Grable* jurisdiction—and distinguished *Merrell Dow* on precisely this ground. *See* 2008 WL 398378, at *6.

\*   \*   \*

In short, Appellees had an objectively reasonable basis to remove the case and argue that all four *Grable* factors are satisfied here. Indeed, Appellees continue to believe that the District Court should have exercised *Grable* jurisdiction. Accordingly, the District Court's Order should be affirmed.

30

## II.   EVEN IF THIS COURT DOES NOT BELIEVE THE REMOVAL WAS OBJECTIVELY REASONABLE, IT SHOULD DEFER TO THE DISTRICT COURT'S DETERMINATION AND AFFIRM.

Even if this Court were to find that the removal was not objectively reasonable, it should nevertheless affirm the decision below because the State cannot demonstrate that the District Court abused its broad discretion in denying an award of costs and fees. In the Fifth Circuit, "[t]here is no automatic entitlement to an award of attorneys' fees." *Valdes*, 199 F.3d at 292; *see also Admiral Ins.*, 574 F.3d at 280 ("The statute does not embody either a strong preference for or a strong preference against fee awards."). Thus, even where this Court would have held that a removal was objectively unreasonable, it has been "reluctant to reverse such a highly discretionary order." *Lee*, 76 F. App'x at 525 (affirming district court's denial of fees and costs even where appellate court believed the "district court could have concluded that the removal lacked objectively reasonable grounds"); *see also Valdes*, 199 F.3d at 292 ("Although from time to time factual situations may arise in which the district court is required to award attorney's fees, the mere determination that removal was improper is not one of them.").

The record below indicates that, far from abusing its discretion, the District Court carefully considered the parties' positions and found there to be an "arguable case" as to whether *Grable* jurisdiction applies. ROA 485 (Oral Argument Tr. 37:20-25); *see also id.* (Oral Argument Tr. 37:14-15 ("So I don't think your arguments are

31

frivolous or sanctionable or anything like that."); ROA 503-504 (Oral Argument Tr. 55:25-56:1) ("I do not view there to be any sanctionable arguments here . . . .")).[6]

Moreover, the State's arguments about the need for deterrence ring hollow. This Court has expressly held that Congress did not "confer a right to remove" with the intention of "discouraging its exercise in all but obvious cases." *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 638 F. App'x 255, 266 (5th Cir. 2015). Even if the Court finds that this was not an "obvious case[]," awarding costs and fees where, as here, the District Court concluded that Appellees had an "arguable" basis to remove the Petition would undermine the public policy underlying the right to removal.

For this reason, too, the District Court's conclusion that Appellees had a colorable basis to remove the Petition and denial of the State's request for costs and fees should be dispositive.

## CONCLUSION

For the foregoing reasons, this Court should affirm the order below denying the State's request for costs and fees under 28 U.S.C. § 1447(c).

---

[6]    The State asserts that the District Court's "comments from the bench suggest that it latched on to impermissible considerations when deciding the State's request for fees and costs." Br. at 24. To the extent the State faults the District Court for importing the Fed. R. Civ. P. 11 standard into the § 1447(c) context, it is important to note that the Court only did so because the State styled its motion to the District Court for costs and fees as a request for "sanctions," and invoked Rule 11. ROA 246-248 (State's Emergency Motion to Remand at 14-16).

April 27, 2026

Eugene Temchenko
Taylin Antonick
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Texas 75205
Telephone: (214) 432-5072
eugene.temchenko@kirkland.com
taylin.antonick@kirkland.com

Respectfully Submitted,

/s/ Geoffrey M. Wyatt
Geoffrey M. Wyatt
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (214) 432-5072
geoffrey.wyatt@kirkland.com

*Attorneys for Johnson & Johnson; Kenvue Inc.; Kenvue Brands LLC (f/k/a Johnson & Johnson Consumer Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing appellate brief was filed electronically on April 27, 2026, and will, therefore, be served electronically upon all counsel.

*/s/ Geoffrey M. Wyatt*
GEOFFREY M. WYATT

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief complies with Fed. R. App. P. 32(a)(7)(B) and (C) because it contains 6,871 words. The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, roman style typeface of 14 points or more.

*/s/ Geoffrey M. Wyatt*
GEOFFREY M. WYATT